IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

LAN LE,                              )
                                     )
                    Plaintiff,       )
        v.                           )        Civil Action No. 1:13-cv-1538-CMH-TRJ
                                     )
CAROLYN W. COLVIN,                   )
Acting Commissioner,                 )
Social Security Administration,      )
                                     )
                    Defendant.       )

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff, Lan Le, seeks judicial review of defendant's

final administrative decision affirming the denial of his application for Social Security Disability

Insurance Benefits ("DIB").  Defendant, the Acting Commissioner of the Social Security

Administration ("Commissioner"), found that plaintiff was not disabled within the meaning of

the Social Security Act ("SSA").  R.[1] at 7-18.  Plaintiff contends that the decision of the

Administrative Law Judge ("ALJ") is not supported by substantial evidence and is erroneous as a

matter of law.

Plaintiff raises three arguments on review: that the ALJ 1) did not conduct a proper

function-by-function analysis supported by substantial evidence; 2) erroneously rejected certain

opinions of the state agency physician; and 3) improperly relied on vocational expert testimony

based on a hypothetical question that did not include all of plaintiff's functional limitations.  To

---

[1] "R." refers to the certified administrative record.

the contrary, defendant contends that there is substantial evidence in the record that demonstrates that plaintiff could perform light work during the relevant period and was not disabled.

This action has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. §§ 636 (b) (1) (B),  Fed. R. Civ. Pro. 72(b), and Local Civil Rule 72.  Having carefully reviewed parties' briefs and the administrative record, and for the reasons that follow, the undersigned recommends that Mr. Le's Motion for Summary Judgment (no. 8) be DENIED; defendant's Motion for Summary Judgment (no. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. <u>PROCEDURAL BACKGROUND</u>

Plaintiff Le protectively filed an application for Social Security disability insurance benefits on September 15, 2010.  R. at 125.  He alleged disability commencing on April 20, 2009 on the basis of a cervical spine injury.  R. at 10, 125, 150.  His claim was denied initially on December 10, 2010 and upon reconsideration on August 11, 2011.  R. at 10, 69-71, 75-77.  An administrative hearing was held on August 15, 2012 at which plaintiff and a vocational expert testified.  R. at 24-44.  On August 29, 2012, the ALJ issued a decision finding that plaintiff was not disabled from April 20, 2009, through the date of the decision.  R. at 18.  Plaintiff requested review of the ALJ decision by the Appeals Council which denied plaintiff's request on October 11, 2013, therefore rendering the ALJ's decision the final decision of the Commissioner.  R. at 1-3, 6.

## II. <u>STANDARD OF REVIEW</u>

Under the Social Security Act, the court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the

evidence.  42 U.S.C. § 405(g); *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)

(quoting *Richardson v. Perales*, 403 U.S. 389, 401 (1971)).  As the Fourth Circuit has stated,

substantial evidence is "evidence which a reasonable mind would accept as sufficient to support

a particular conclusion.  It consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance."  *Hays*, 907 F.2d at 1453 (quoting *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966)).

　　　　In determining whether the Commissioner's decision is supported by substantial

evidence, the court must examine the record as a whole.  The court may not "undertake to re-

weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for

that of the Secretary."  *Maestro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v.

Chater*, 76 F.3d at 589 (4th Cir. 1996)).  If the ALJ made specific credibility determinations,

supported by a discussion of specific evidence and an evaluation of plaintiff's testimony, then

the ALJ's credibility findings receive great weight.  *See Shively v. Heckler*, 739 F.2d 987, 989

(4th Cir. 1984).  If the ALJ's findings as to any fact are supported by substantial evidence, they

are conclusive and must be affirmed.  *Perales*, 402 U.S. at 390.  Furthermore, the ALJ as the trier

of fact is charged with evaluating the medical evidence and assessing symptoms, signs, and

medical findings in order to determine the claimant's residual functional capacity.  *Hays*, 907

F.2d at 1456-57.  Overall, if the ALJ's findings and resolution of conflicts in the evidence are

supported by substantial evidence, the court is to affirm the Commissioner's final decision.

*Laws v. Celebreeze*, 368 F.2d 640, 642 (4th Cir. 1966).

### III. <u>RELEVANT FACTUAL BACKGROUND</u>

At the time of the administrative decision, plaintiff was a 51 year old man with a high school education.  R. at 17, 26.  Plaintiff's former job position was as a pressman for the Washington Post.  R. at 38.  On April 20, 2009, his alleged onset date, he injured his cervical spine in a work-related accident.  R. at 29, 249, 263.  After the injury, he sought treatment from an orthopedic specialist, Dr. Ronald Childs.  R. at 263-264.

In a May 11, 2009 progress report, Dr. Childs diagnosed plaintiff with cervical spondylosis with radiculopathy and a disc herniation with compression.  R. at 264.  In the report, Dr. Childs noted that he continued to work after his injury and had persistent symptoms although not "absolutely incapacitating." R. at 263-64.  Also, Dr. Childs reported that plaintiff was well-developed, alert and oriented, had a normal gait, a full range of motion with pain upon extension and compression of his head and neck to the left, and no other motor deficits or atrophy.  *Id*.  Dr. Childs advised that plaintiff may require surgical stabilization and ordered that he undergo regular physical therapy.  R. at 253, 264.

On June 18, 2009, plaintiff was assessed by a physical therapist who opined that plaintiff had decreased cervical and left shoulder range of motion, but noted that it was improving and that he had no motor or sensory impairment.  R. at 235-36.  Thereafter, on July 23, 2009, plaintiff underwent an anterior cervical discectomy and fusion with instrumentation at the C5-C6 and C6-C7 levels.  R. at 222-224.

After the surgery, plaintiff gradually experienced improvements in his condition.  On September 30, 2009, two months after the surgery, Dr. Childs reported that plaintiff's left shoulder symptoms had resolved and that he was improving slowly.  R. at 258.  However, Dr. Childs noted that plaintiff's MRI showed significant cervical spondylosis at the C4-C5 level and

that he had some right shoulder discomfort. R. at 258. Dr. Childs anticipated clearing him at three months post-operatively for full activity. R. at 258.

On January 6, 2010, six months after the surgery, Dr. Childs documented that plaintiff has "clearly improved from the early post-operative period" but also noted that plaintiff continued to complain of back pain and pain when sitting or standing down. R. at 257. Overall, Dr. Childs found that his x-rays and MRI were satisfactory. R. at 257. By July 2010, plaintiff requested to be evaluated for clearance to return to work without restrictions. R. at 254. Dr. Childs indicated that plaintiff's x-rays of his cervical spine showed that his "hardware" was in good position and that he could return to work following a functional capacity evaluation with restrictions on lifting. *Id*.

In a November 2010 progress note, Dr. Childs noted that plaintiff "is able to work at this juncture" and found that plaintiff's range of motion in regards to his spine, shoulder, knee, and hip were all within normal limits. R. at 268-69. On December 7, 2010, Dr. Childs completed a neurological evaluation form which stated that plaintiff had normal coordination, gait, and station, normal strength in his lower and upper extremities. R. at 270. In a progress report dated, February 14, 2011, Dr. Childs found that plaintiff was neurologically intact and cleared him to return to work at light duty with no repeated heavy overhead lifting. R. at 279, 282.

The following month, March 15, 2011, another orthopedic provider found that his cervical range of motion was limited due to voluntary grading and that an x-ray showed an incomplete fusion. R. at 278. Ultimately, the doctor cleared plaintiff for light duty work except with no lifting greater than 20 pounds. *Id*. On April 4, 2012, Dr. Childs found that plaintiff's exam and complaints were unchanged, he had a normal gait and rose easily from a seated position. R. at 313. On April 10, 2012, a doctor recommended that plaintiff undergo a fusion

surgery to treat an incomplete bone fusion but suggested that if plaintiff did not want to have surgery it would be better for him to get a pain medication prescription.  R. at 312.   The doctor also noted that he was a smoker and reported that plaintiff "understands[s] that smoking is definitely a cause of nonunion in the fusion."  *Id.*  At the time of the hearing, plaintiff had not elected to have a second surgery and was only taking medication as his treatment.  R. at 36.

Two state agency medical experts, Dr. Ellwood and Dr. Kadian, reviewed plaintiff's file in December 2010 and August 2011, respectively.  Dr. Ellwood concluded that plaintiff could perform light exertional work and found that plaintiff had no significant inability to move about and did not have severe muscle weakness or nerve damage that prevented him from doing work activity.  R. at 46-51.  Similarly, Dr. Kadian found that although plaintiff experienced pain, his medical record showed no significant muscle loss or weakness and concluded that plaintiff could perform light work. R. at 63-64.

At the hearing, plaintiff, who is right hand dominant, testified that he has left arm and shoulder pain and numbness, regularly takes the pain medication, Percocet, and occasionally has difficulty getting dressed.  R. at 30-32, 161.  As to daily activities, plaintiff reported that he drives, takes a bath every morning, goes outside every day, eats out regularly at restaurants and bars, smokes a half pack of cigarettes a day, and can be active for a couple of hours at a time until his pain increases.  R. at 26, 33, 36, 158-60.  Also, plaintiff testified that he does not have any limitations with his right arm despite having some issues with his right shoulder.  R. at 36.

## IV. <u>THE ALJ DECISION</u>

In every Social Security Disability claim analysis, the ALJ is required to first determine whether the claimant met the insured status requirement.   Then, the ALJ must conduct a five-

step sequential evaluation to determine if the claimant is disabled and therefore is eligible for disability insurance benefits. 20 C.F.R. § 416.920(a). It is this five-step process that the court examines on appeal to determine whether the correct legal standard was applied and whether the resulting decision was supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520; 416.920. The five-step disability inquiry requires a determination, in sequence, on (1) whether plaintiff is engaged in substantial gainful activity; (2) whether plaintiff has a severe impairment; (3) whether plaintiff has a severe impairment that met the requirements of a "listed" impairment; (4) plaintiff's residual functional capacity ("RFC") and ability to perform past relevant work; and (5) plaintiff's ability to perform any other work in the national economy. R. at 17-18; *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

As an initial matter, the ALJ found that plaintiff met the date last insured requirement through September 30, 2015. R. at 10. In applying the five-step process, the ALJ proceeded to make the following five findings: First, plaintiff had not engaged in substantial gainful activity since his alleged onset date, April 20, 2009. R. at 12. Second, he had a severe impairment, degenerative disc disease of the cervical spine. R. at 12; 20 C.F.R. 404.1520(c). Third, he did not have a severe impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. Part 404. R. at 13. Fourth, he was unable to perform any past relevant work. R. at 17. Specifically, the ALJ found that plaintiff possessed the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. He may frequently balance, defined as normal balancing and not balancing as part of work criteria. He may frequently kneel, stoop, and crouch, but only occasionally crawl. He may occasionally reach overhead with the non-dominant arm and frequently reach in all other directions with the non-dominant arm. He may frequently handle and finger with the non-dominant hand. He may have

7

occasional contact with extreme heat, extreme cold, humidity, wetness, and vibrations; and may frequently operate a motor vehicle. R. at 13.

Fifth, he was capable of performing other work which exists in significant numbers in the national economy. R. at 17-18. Based on the five-step evaluation process, the ALJ ultimately determined plaintiff was not disabled, within the meaning of the Social Security Act, from April 20, 2009, through the date of the decision, August 29, 2012.

## V. <u>ANALYSIS</u>

Plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment was erroneous for three reasons. First, he asserts that the ALJ's RFC was not supported by substantial evidence and that the ALJ failed to conduct a proper function-by-function assessment of plaintiff's limitations. Second, he asserts that the ALJ improperly rejected the state agency physician's finding regarding plaintiff's bilateral upper extremity limitations. Third, he asserts that the hypothetical questions posed to the vocational expert did not contain limitations on plaintiff's ability to use his dominant right upper extremity, and allowed for frequent, rather than occasional, reaching in the non-dominant upper extremity. Based on a review of the record and the parties' arguments, the magistrate judge finds that the ALJ's findings are not erroneous as a matter of law and are supported by substantial evidence in the record. The magistrate judge will address these three arguments in turn.

### A. <u>The ALJ's Residual Functional Capacity Assessment is Supported by Substantial Evidence and Comports with Applicable Legal Standards.</u>

First, plaintiff argues that the ALJ's residual functional capacity assessment is not supported by substantial evidence and that the ALJ did not conduct a proper function-by-function assessment of plaintiff's functional limitations. The magistrate judge disagrees and

finds that the ALJ's RFC assessment that plaintiff was capable of performing light work was proper as a matter of law and well supported by substantial evidence.

In the decision, the ALJ found that plaintiff had the RFC to perform light work which included that he could frequently climb ramps and stairs, balance, stoop, and kneel, reach in all other directions with his non-dominant left arm and handle and finger with his left hand.  R. at 13.  Also, the ALJ found that plaintiff could perform light work with certain limited functional restrictions which included that he could occasionally climb ladders or scaffolds and reach overhead with his non-dominant, left arm.  *Id.*  Given these limitations, the ALJ ultimately determined that based on plaintiff's RFC as well as other factors like his age and education, plaintiff could perform a range of unskilled, light work for which significant number of jobs existed in the national economy.  R. at 17-18.

1. *The ALJ Conducted a Proper Residual Functional Capacity Assessment.*

Plaintiff's main contention is that the ALJ failed to provide a detailed narrative discussion and "function-by-function" assessment of his RFC pursuant to Social Security Ruling ("SSR") 96-8p.  SSR 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  In assessing a claimant's RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  *Id.* Moreover, the determination must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations.  *Id*, *see also* 20 C.F.R. § 404.1545(a).

Upon review of the record, the magistrate judge finds that the ALJ provided a proper narrative discussion of plaintiff's RFC based on reasoned analysis grounded in substantial record evidence.  In accordance with applicable SSA regulations, the ALJ conducted an RFC assessment in consideration of the entire record which included plaintiff's objective medical records, examination findings, plaintiff's testimony, two State Agency physicians' evaluations, and other medical opinions from Dr. Childs.  There is no rigid and particular format that the ALJ must use in order to assess plaintiff's RFC so long as the ALJ engaged in a reasoned discussion of plaintiff's functional limitations and work capacity.  *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining that there was "no rigid requirement" that the ALJ must "refer to every piece of evidence in his decision, so long as the ALJ's decision" sufficiently allows the reviewing court to conclude that the ALJ considered claimant's medical condition as a whole).

Here, the ALJ specifically referenced several medical records along with plaintiff's testimony and other record evidence that rationally support his finding on plaintiff's capacity to perform light work with the stated functional limitations.  The ALJ's residual functional capacity assessment is thoroughly set forth in over five pages of single spaced narrative analysis that logically discusses the evidence the ALJ relied upon in determining the plaintiff's RFC.  R. at 13-17.  For these reasons, the magistrate judge finds that the ALJ's RFC assessment fully satisfies SSR 96-8p and 20 C.F.R. § 404.1545.

2. *The ALJ's Determination that Plaintiff could Perform Light Work with Limited Exceptions is Supported by Substantial Evidence*.

Plaintiff contends that the ALJ's ultimate decision that plaintiff was not disabled is not supported by substantial evidence.  Based on a review of the entire record, the magistrate judge

disagrees and finds there is substantial evidence that supports the Commissioner's final decision that he was not disabled.  The record is replete with evidence that plaintiff was capable of performing light work despite his spinal and disc injury.

In the decision, the ALJ properly concluded that nothing in the record supported a finding that plaintiff was disabled.  None of plaintiff's treating doctors or the two state agency physicians that reviewed his file found that plaintiff was disabled.  Also, none of these doctors opined that plaintiff was permanently incapable of performing any work during the relevant period.  The record clearly reflects that plaintiff could perform light work with those listed exceptions in the RFC.  In the decision, the ALJ fairly discussed the objective clinical findings showing that plaintiff suffered from a moderate disc bulge and degenerative disc disease.  R. at 12-14.  The ALJ acknowledged plaintiff's complaints of neck, left arm, and right shoulder pain.  R. at 14-17.  Also, the ALJ extensively described plaintiff's treatment history with Dr. Childs.  For example, the ALJ discussed several of Dr. Childs' progress reports that indicate that plaintiff's condition "clearly improved" post-surgery especially with his left shoulder symptoms.  R. at 15-16.

Overall, the ALJ found that the objective findings did not support the extreme limitations alleged by plaintiff.  R. at 14.  The ALJ specifically described examination findings showing that plaintiff was relatively healthy and had a normal range of motion.  R. at 14, 263-64, 269. Specifically, the ALJ explained that the record consistently showed that plaintiff was "neurologically intact" and that he did not have any significant motor deficits or decreased strength.  R. at 14-16, 236, 258-59, 263, 268-70, 278, 282.

Notably in the decision, the ALJ discussed how Dr. Hughes recommended an additional fusion surgery but at the time of the hearing, plaintiff had not elected to have another surgery and pursued conservative treatment which was only consisted of taking pain medication.  R. at 14,

16. Also, the ALJ properly took into consideration the doctor's opinion that plaintiff's smoking habits contributed to his delayed healing and was "definitely a cause of nonunion in the fusion." R. at 16, 312.

Most importantly, there are substantial medical opinions in the record that plaintiff could perform light work. Here, two state agency physicians, Dr. Kadian and Dr. Ellwood, opined that plaintiff could perform light work. In February 2011, Dr. Childs cleared plaintiff for light duty work with the only cited restriction of avoiding heavy overhead lifting. In November and July 2010, Dr. Childs expressed that plaintiff "is able to work at this juncture." R. at 254, 268. Two months after the surgery, Dr. Childs anticipated that plaintiff would be cleared to return to full activity three months post-operatively. R. at 258. Also, in March 2011, another doctor cleared plaintiff for light duty work with the only restriction of "no lifting greater than 20 pounds. R. at 278. There is even record evidence suggesting that plaintiff temporarily worked after the alleged onset date. Dr. Childs in a May 2009 progress report wrote that plaintiff "sustained a lifting injury on April 20, 2009, but kept working." R. at 263.

Based on a review of the entire record and for the above reasons, the magistrate judge finds that the ALJ conducted a proper function-by-function RFC assessment and that his finding that plaintiff could perform light work is supported by substantial evidence.

### B. THE ALJ PROPERLY EVALUATED THE OPINIONS OF THE STATE AGENCY PHYSICIAN.

Plaintiff contends that the ALJ failed to properly evaluate the opinion evidence of the state agency physician, Dr. Kadian. Specifically, he asserts that the ALJ's evaluation of Dr. Kadian's opinions was erroneous as a matter of law because the ALJ "failed to recognize that the limitations assessed by Dr. Kadian were bilateral and failed to include any limitation upon [p]laintiff's ability to reach in any direction with his right dominant upper extremity in his

residual functional capacity assessment." Pl. Mem. at pg. 7.  Also, he asserts that the ALJ failed to incorporate in the RFC Dr. Kadian's finding that plaintiff had limitations in his ability to push and pull with his upper extremities or operate hand controls.  R. at 60-61.  The magistrate judge finds that plaintiff's argument is without merit.  The decision clearly reflects that the ALJ properly considered Dr. Kadian's opinions along with other record evidence in determining plaintiff's residual functional capacity.

At the reconsideration stage, Dr. Kadian reviewed the record and completed a disability determination explanation on plaintiff.  R. at 53-63.  In the decision, the ALJ accorded "great weight" to Dr. Kadian's opinion that plaintiff could perform light work with certain limitations. R. at 16.  Specifically, in evaluating the medical opinion of Dr. Kadian, the ALJ stated:

> [Dr.Kadian] opined the claimant could occasionally lift twenty pounds and ten pounds frequently.  He noted the claimant could stand and walk six hours, and sit six hours in an eight-hour day with limited push/pull in the upper extremities.  He noted the claimant could frequently perform postural activities but only occasionally climb ladders, ropes or scaffolds and crawl. Reaching in front, laterally and overhead is limited in both upper extremities. (Exhibit 3A). The undersigned gives great weight to Dr. Kadian's opinion in that it is consistent with the record as a whole.  R. at 16.

Contrary to plaintiff's contentions, the magistrate judge first finds that the ALJ expressly acknowledged Dr. Kadian's opinion that plaintiff had bilateral limitations when the ALJ stated that the state agency opined, "[r]eaching in front, laterally and overhead is limited in *both upper extremities*." The magistrate judge agrees with the government's position that the ALJ's discussion of "both upper extremities" is synonymous with "bilaterally." R. at 17.

Also, plaintiff contends that the ALJ erred by not explicitly including in the RFC Dr. Kadian's opinions regarding plaintiff's limitations with the right upper extremity despite affording his opinion "great weight."  Plaintiff's argument is flawed.  According to SSA regulations, the ALJ is not required to entirely rely on a particular physician's opinion or to

adopt every single specific limitation of a state agency physician in the RFC especially if those findings are not supported by substantial evidence and contradicted by other evidence. *Davis v. Astrue*, No. 3:10-cv-7012011 (E.D.Va. October 11, 2011) (explaining that the ALJ's determination that such opinions are entitled to great weight because they are generally consistent with the medical evidence of record, "does not necessarily mean that the ALJ was then required to adopt every opinion offered by the physicians.").

Under applicable SSA regulation, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1546(c). As the trier of fact, the ALJ is charged with the responsibility of considering the medical opinions of record and weighing each opinion according to factors such as the supportability and consistency of the opinion. 20 C.F.R. § 404.1527. Moreover, the RFC assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. § 404.1545(a).

The magistrate judge finds that the ALJ did not err in incorporating all of Dr. Kadian's findings into the RFC. Consistent with SSA regulations, the magistrate judge finds that the ALJ in making his RFC assessment considered not only the medical opinions of Dr. Kadian, but all the other relevant record evidence including the medical opinions of Dr. Childs, state agency physician Dr. Ellwood, plaintiff's testimony, and objective medical records.

Plaintiff contends that the ALJ did not include any limitations upon plaintiff's ability to reach in any direction with his right dominant upper extremity in the RFC assessment. The magistrate judge finds that the ALJ did not err in excluding in the RFC any purported limitations as to plaintiff's right upper extremity because there is substantial evidence that plaintiff had little

14

or no limitations in his right upper extremity particularly his right arm. Although the record reflects that plaintiff complained of right shoulder pain and discomfort, there is no documented objective medical evidence that plaintiff had a disabling right shoulder or right arm condition. R. at 323. Plaintiff's testimony, as well as the medical opinions from Dr. Childs, demonstrates that plaintiff did not have significant right arm limitations. At the hearing, when the ALJ explicitly asked plaintiff if some issues with his right shoulder "affect his ability to use his right arm at all," plaintiff unequivocally responded "No." R. at 36. Less than a month after plaintiff's work related injury, Dr. Childs in a May 11, 2009 progress report stated that plaintiff had "no right arm problems." R. at 263. In a May 21, 2009 physical therapy evaluation, the physical therapist documented that plaintiff's right shoulder flexion and abduction were within normal limits and had a 5/5 strength level which remained unchanged in the June 10, 2009 report. R. at 240, 244. Moreover, in a January 2010, progress report, Dr. Childs stated that plaintiff has "no true pain down the arms. That has cleared." R. at 322. Furthermore, in a November 2010 range of motion form completed by Dr. Childs, he noted that the abduction, extension, and rotation of plaintiff's right shoulder were all within normal limits. R. at 269. Accordingly, the ALJ did not err by excluding limitations suggested by Dr. Kadian that were not substantiated or were contradicted by other medical evidence.

Also, plaintiff contends that the ALJ erred by not incorporating Dr. Kadian's opinion that "plaintiff was limited to no more than occasional reaching in any direction with his upper extremity." R. at 61. For similar reasons previously discussed, the ALJ was not required to adopt the state agency physician's reported functional limitations that were not supported by or inconsistent with other substantial record evidence. There is substantial medical evidence that plaintiff was not as restricted in his ability to reach and handle objects and use his upper

15

extremity as he claimed to be.  Moreover, although Dr. Kadian indicated that plaintiff was "limited to occasional reaching in any direction," he also found that plaintiff's ability of handling and fingering were unlimited and that plaintiff could frequently lift and carry (including upward pulling) ten pounds.  R. at 60-61.  In light of this evidence, the ALJ's decision to not include limitations with plaintiff's right upper extremities and Dr. Kadian's finding that plaintiff was limited to occasional reaching in any direction was not erroneous as a matter of law but was supported by substantial evidence.  It is important to note that the ALJ and not the court has the task of resolving conflicts in the evidence.  Moreover, the court is precluded from re-weighing the facts considered by the ALJ.  42 U.S.C. § 405(g); *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  Here, the magistrate judge finds that the ALJ properly weighed the medical opinion along with other record evidence in determining plaintiff's residual functional capacity,

## C. THE ALJ'S RELIANCE ON THE VOCATIONAL EXPERT TESTIMONY WAS NOT ERRONEOUS.

Lastly, plaintiff argues that the ALJ erroneously relied on vocational expert testimony based on a hypothetical question that did not include all of plaintiff's functional limitations.  Specifically, he argues that the hypothetical question relied upon was deficient because it did not contain limitations on plaintiff's ability to use his right arm and allowed for frequent, rather than occasional, reaching in the non-dominant upper extremity.  R. at 39-40.  Additionally, plaintiff contends that the three occupations identified by the vocational expert could not be performed by him based on all the limitations assessed by state agency physician Dr. Kadian.  The magistrate judge disagrees with plaintiff and finds that the ALJ properly relied on the vocational expert testimony.

At step five of the sequential evaluation process, the ALJ elicited testimony from an impartial vocational expert who assessed plaintiff's functional limitations and determined

whether plaintiff could perform work despite his impairments and in light of his age, work experience, and education.  The ALJ posed to the vocational expert a hypothetical question about whether a person could perform work in the national economy based on a hypothetical individual with the same age, education, and work experience as plaintiff with the residual functional capacity to perform light work with the identical limitations set forth in the ALJ's RFC finding.  R. at 39-42.  In response to this hypothetical question, the vocational expert identified three occupations from the light, unskilled occupational base that the hypothetical person could perform which were an office helper, ticket taker, and packer and packaging worker.[2]  *Id.*

Plaintiff's third argument primarily rests on the proposition that the ALJ should have adopted all of Dr. Kadian's opinions as part of his RFC finding.  As discussed in the previous section, the plaintiff's argument fails because it was proper for the ALJ to include only those functional limitations well-supported by the medical evidence.  The hypothetical question posed to the vocational expert was proper because it contained all the credible functional limitations determined by the ALJ and that were well-established by the record as whole.  *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) ("'In order for a [VE]'s opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.'") (*citing Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  Accordingly, the ALJ did not err in relying on the vocational expert testimony in making his disability determination.

---

[2]  Plaintiff in a footnote in his memo indicates that one of the three occupations, packer and packaging worker, identified by the vocational expert did not match the occupational code number stated, DOT 222.687.022.  R. at 40, Pl. Mem. at 9.  This DOT (The Dictionary of Occupational Titles) number corresponds to the occupation of a routing clerk. The magistrate judge finds that this was likely an inadvertent error which does not change the analysis above.  The vocational expert testified that the three occupations stated were only examples and did not consists of an exhaustive list of the light, unskilled occupations that a hypothetical person could perform based on the ALJ's RFC finding and plaintiff's background.  *Id.*

Plaintiff also contends that the occupational descriptions of the three occupations, office helper, ticket taker, and routing clerk, could not be performed by plaintiff because they all require the ability to reach frequently which is outside the range of work that he can perform. Plaintiff's contention rests on the fact that Dr. Kadian opined that plaintiff was limited to no more than occasional reaching with the upper extremities. The magistrate judge disagrees with plaintiff's reasoning and finds that there is substantial evidence that plaintiff can perform such unskilled, light work occupations.  As extensively discussed above, there is substantial evidence in the record that plaintiff was able to frequently lift and carry light objects and that he was not significantly restricted in his ability to use his upper extremities.  Also, the magistrate judge notes that although these occupational descriptions require the ability to exert up to 10 pounds of force frequently, they do not make any distinctions as to whether this must be with the dominant or non-dominant hand or bilateral upper extremity.  *See* Pl. Mem. at Exs. A-C.  There is substantial evidence that plaintiff could frequently reach, lift, and carry with his left hand.  Also, the record strongly reflects that plaintiff had no marked limitations with his right arm either. Accordingly, the vocational expert testimony relied upon by the ALJ in making the disability determination was based on a hypothetical question that appropriately contained all of plaintiff's impairments that were well-supported by record evidence.

## VI. <u>RECOMMENDATION</u>

The magistrate judge finds that there is substantial evidence that plaintiff was not disabled within the meaning of the SSA and that the ALJ conducted an RFC assessment in accordance with the governing regulations.  Accordingly, the magistrate judge recommends that plaintiff's Motion (no. 8) for Summary Judgment be DENIED and defendant's Motion (no. 13) for Summary Judgment be GRANTED.

## VII. <u>NOTICE</u>

By means of the court's electronic filing system, the parties are notified as follows.

Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation.  A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

                                                    /s/
                                   _____
                                        Thomas Rawles Jones, Jr.
                                        United States Magistrate Judge

May 29, 2014
Alexandria, Virginia